Scileppi, J. (dissenting).
Petitioner, a veteran, was charged with misconduct, incompetency and violation of the Rules and Regulations of the Department of Buildings for failing promptly to report to his borough superintendent the removal of certain department records. No corrupt activity on petitioner’s part was alleged. After a hearing, petitioner was found guilty of misconduct and suspended from his position as assistant chief inspector of housing. Admittedly, petitioner did not report the removal of the records to his borough superintendent, but it seems clear to me that the finding of misconduct cannot be sustained unless petitioner was under some duty to so report to him. Since no such obligation has been demonstrated, the discipline meted out to petitioner was improperly imposed.
During the week of October 6, 1958, while petitioner’s immediate superior, Timothy Noonan, was on vacation and petitioner was the acting chief of the office, petitioner received a telephone call from a restaurant manager informing him that certain records belonging to the Department of Buildings had been found in his restaurant. Petitioner dispatched an inspector to the restaurant who picked up the records and returned them to *1063 petitioner. Because petitioner was handling both Noonan’s and his own work that week, the records remained on his desk for some time until he was afforded an opportunity to examine them. When he did so he discovered among them a small scrap of paper bearing four unintelligible words; otherwise the records were completely intact. Suspecting that the handwriting on the paper was that of Edward Heater, an inspector in the complaint section, petitioner called the chief clerk into his office to help confirm his suspicion. The chief clerk was also of the opinion that the handwriting was Heater’s. Petitioner then gave instructions to check the office files to determine whether someone had signed out for the records, and, if so, who. When these inquiries proved fruitless, petitioner continued his investigation.
Sometime during the same week, petitioner received a telephone call from Heater, who was also on vacation. Heater requested petitioner to retain the records until he returned from vacation on October 15. Petitioner assured Heater that he would do so and that he wanted to question Heater upon his return to the office. Nothing was said at that time about the removal of the records from the office.
Noonan and Heater both returned from vacation at about the same time. At any rate, it is clear that Noonan had returned to the office by October 15, at which time petitioner questioned Heater about the records. After some initial denials, Heater admitted that he had removed the records, but pleaded for leniency because of his age and health. Petitioner, who was unaware that Heater was facing departmental charges, took Heater’s prior trouble-free record into account and merely severely reprimanded him. The next day, petitioner instructed the chief clerk to replace the records and to prosecute, where necessary, any violation that appeared thereon.
At the hearing, both petitioner and Noonan — the only witnesses— testified that petitioner had reported to Noonan, upon the latter’s return from vacation, that the records had been removed and of the results of his investigation to date. Petitioner added that, although before speaking to Noonan he had had no previous independent recollection of having made this report, Noonan had refreshed his recollection of the incident. The hearing examiner recited this testimony in his opinion, but apparently did not give it any credence. Nevertheless, it is undisputed that after petitioner reprimanded Heater he let *1064 the matter drop without making any report to Noonan or the borough superintendent of the action he had taken. However, whether or not petitioner reported to Noonan is not controlling, since petitioner was charged, found guilty and disciplined for failing to report to his borough superintendent, not for failing to' report to Noonan. The inquiry must thus be directed to petitioner’s alleged obligation to report to the borough superintendent.
The first asserted ground upon which is 'based petitioner’s obligation is rule 39 of the Department of Buildings Bules and Regulations which reads:
‘ ‘ 39. Safekeeping of Records
‘1 1. Employees shall be held responsible for the safekeeping of all books and papers in their care.
“ 2. The penalty for the loss, mutilation or defacement of any such articles will be the imposition of such fine or other disciplinary action as in the judgment of the commissioner appears warranted.
‘ ‘ 3. .Under no circumstances shall an application, plan, record, book, or papers be taken from the office without the consent of either the commissioner or deputy commissioner or borough superintendent.
‘ ‘ 4. This rule shall not apply to such records as the inspectors may require or use in the field for official business, nor the subpoenaed records, which shall be returned promptly to the properfiles.”
This rule does not contain any express provision requiring that a report be filed with the borough superintendent in the event that the rule is not complied with. The borough superintendent is mentioned only once in the rule, and that time in the disjunctive with the Commissioner or deputy commissioner. Nor do I think that a reading of the rule would imply to a reasonable man that such a requirement was mandated by it. If misconduct is to be predicated upon the violation of a rule, that rule should spell out with greater particularity than does this one the conduct enjoined by it.
Under the facts presented, absent a specific rule or regulation requiring petitioner to report directly to the borough superintendent, there could be no duty imposed upon him to do so. It was only while petitioner was acting chief of the office- that the borough superintendent was his immediate superior. True, *1065 petitioner might have reported the incident to the borough superintendent during the week of October 6; but at that time he did not know who had removed the records, or even if they had been removed illegally. Bule 39 is expressly inapplicable to records which were being used in the field or in response to subpoenas. At most, petitioner’s failure to report to the borough superintendent that the records had been removed without being signed out was an error of judgment which could not be deemed to constitute misconduct (Matter of Ryan v. New York State Liq. Auth., 273 App. Div. 576; Matter of Eisle v. Woodin, 205 App. Div. 452, affd. 238 N. Y. 551). Petitioner was still investigating, and the ultimate explanation might have proven to have been simple and innocent.
The hearing officer also must have realized this for his determination that petitioner was guilty of misconduct was based on a finding that petitioner “covered up” Heater’s dereliction. This, of course, could not have occurred until petitioner confronted Heater, and by that time Noonan was also back on the job.
Thus, even if it be assumed that petitioner, after he had confronted Heater on October 15, had an obligation to report what he found and what action he had taken, the question still remains: To whom was petitioner obligated to report! The answer to this is self-evident. It was to Noonan, his immediate superior, and not to the borough superintendent. A failure to report to the latter, therefore, could not constitute misconduct because petitioner had no duty to report to him. Since the specification of charges states that petitioner’s conduct was his failure to report to the borough superintendent, the order appealed from should be reversed.
Order affirmed.